FILED
SUPERIOR COURT
OF GUAM

2022 MAY -5 AM 10: 38

CLERK OF COURT

BY:_____

IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0116-84**<br>CRIMINAL CASE NO. **CF0085-83** |
| vs. | **DECISION AND ORDER** |
| **ELIGIO ADRIATICO,**<br><br>Defendant. | |

## INTRODUCTION

The above captioned matters came before the Honorable Vernon P. Perez on January 21, 2022, for hearing on Defendant Eligio Adriatico's ("Adriatico") Motion for Compassionate Release and Reduction in Sentence. Present remotely via Zoom was Assistant Attorney General Marianne Woloschuk on behalf of the People of Guam ("the Government"), and present remotely via teleconference was Adriatico, *pro se*. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order DENYING Adriatico's Motion for Compassionate Release and Reduction in Sentence.

## BACKGROUND

Adriatico and co-defendant Romeo P. Marquez were charged in Criminal Case No. CF0085-83 after engaging "in a crime spree that left seven people dead and ten seriously injured" between September 28 and October 4, 1983. *People v. Marquez,* 1986 WL 68899, *1 (D. Guam App. Div. 1986). The matter proceeded to trial and on April 21, 1984, a jury found Adriatico guilty of two counts of Aggravated Murder; one count of Attempted Aggravated

*People v. Adriatico*
CF0116-84 & CF0085-83
Decision and Order

Murder; five counts of Murder; one count of Aggravated Assault; two counts of Assault; one count of Robbery in the Second Degree; and two counts of Possession and Use of a Deadly Weapon in the Commission of a Felony.[1] (Judgment in CF0085-83, May 21, 1984). On May 11, 1984, Adriatico was sentenced by Judge Paul J. Abbate to life imprisonment without parole or work release for each count of Aggravated Murder; life imprisonment for each count of Murder; fifteen (15) years of imprisonment for Attempted Aggravated Murder; three (3) years of imprisonment for Aggravated Assault; one (1) year of imprisonment for each count of Assault; ten (10) years of imprisonment for Robbery in the Second Degree; and twenty-five (25) years of imprisonment and three (3) years of parole for each count of Possession and Use of a Deadly Weapon in the Commission of a Felony. (Judgment in CF0085-83, May 21, 1984). The sentences for Possession and Use of a Deadly Weapon in the Commission of a Felony were imposed consecutively to each other, and to the other charges. *Id.* The sentences for Aggravated Murder, Murder, Attempted Aggravated Murder, Aggravated Assault, Assault, Robbery in the Second Degree were to run concurrently with each other and consecutive to the sentences for Possession and Use of a Deadly Weapon in the Commission of a Felony. *Id.* On appeal, the District Court of Guam Appellate Division reversed the conviction for one deadly weapon special allegation (Second Charge, Count IV) and affirmed the remaining convictions. *See Marquez*, 1986 WL 68899 *6 (D. Guam App. Div. 1986) ("Count IV of the Second Charge alleged possession by Adriatico of either a 9mm or .45 caliber handgun. The evidence showed Sumabat had the .45 and Marquez the 9mm. The conviction is reversed.").

Defendants Adriatico and Marquez were to serve their terms of imprisonment at the Department of Corrections. They were subsequently charged in CF0116-84 after shooting four inmates in the prison on August 7, 1984, which resulted in the death of two of inmates and two inmates being permanently disabled. (Pre-Sentence Investigation Report in CF0116-84). The matter proceeded to trial and on November 5, 1984, a jury found Adriatico guilty of two counts

---

[1] Marquez was found guilty of three counts of Aggravated Murder; four counts of Murder; one count of Attempted Aggravated Murder; one count of Aggravated Assault, two counts of Assault; one count of Robbery in the Second Degree; and three counts of Possession and Use of a Deadly Weapon in the Commission of a Felony.

of Aggravated Murder; two counts of Attempted Aggravated Murder; and four counts of Possession and Use of a Deadly Weapon During the Commission of a Felony.[2] (Judgment in CF0116-84, Nov. 21, 1983). On November 19, 1984, Adriatico was sentenced by Judge Janet Healy Weeks to "four (4) life sentences without parole or release to be served concurrently to each other and consecutive to that sentence now being served by defendant in Criminal Case No. 85F-83, plus four (4) sentences of twenty-five (25) years each with having special parole term of three (3) years on Possession and Use of a Deadly Weapon During the Commission of a Felony (4 counts) to be consecutive to the four (4) life sentences and consecutive to each other." *Id.*

Adriatico is currently serving his term of imprisonment at the United States Penitentiary in Atwater, California.

On August 4, 2021, Adriatico filed the instant Motion. On August 25, 2021, CF0116-84 and CF0085-83 were assigned to this Court. *See* Notice of Judge Assignment, Aug. 25, 2021. As this Court did not preside over either criminal matter during trial and sentencing, the Court ordered Probation to provide a copy of the Pre-Sentence Investigation Report prepared for sentencing, if any, and for the Court Reporters Unit of the Superior Court of Guam to provide the Court with a copy of the recordings from the Sentencing Hearings. *See* Order, Sept. 8, 2021. The Court also ordered the Government to file its response to the Motion by October 15, 2021.

On October 15, 2021, the Court received a copy of the Pre-Sentencing Investigation Report prepared in November 1984 for CF0116-84. Probation was unable to locate a Pre-Sentence Investigation Report for CF0085-83. *See* Informational Report, Oct. 14, 2021.

On December 7, 2021, the Government filed a Motion for Leave to File Untimely Opposition to Motion for Compassionate Release. On January 10, 2022, Adriatico filed his

---

[2] Marquez was also found guilty of two counts of Aggravated Murder; two counts of Attempted Aggravated Murder; and four counts of Possession and Use of a Deadly Weapon During the Commission of a Felony. (Judgment in CF0116-84 (Marquez), Dec. 13, 1984).

Objection to the Government's Motion, and on January 19, 2022, the Government filed its Reply.

On January 21, 2022, the Court heard further argument on both motions and subsequently placed the matters under advisement.

On February 7, 2022, the Court received correspondence from Adriatico regarding the Federal Bureau of Prisons' ("BOP") COVID-19 protocol, in response to arguments set forth at the January 21, 2022 hearing.

On March 22, 2022, the Court received correspondence from Adriatico requesting for the Court to take judicial notice of a report from the U.S. Sentencing Commission regarding youthfulness.

## DISCUSSION

The first issue before the Court is the Government's Motion for Leave to File Untimely Opposition to Motion for Compassionate Release. The Government indicates that its opposition is untimely because it was unaware of the Motion for Compassionate Release until December 6, 2021, as Adriatico did not serve them with the motion and the Court's September 8, 2021 Order went astray. (Mot. Leave at 2, Dec. 7, 2021). Adriatico opposes, arguing that the Government was served the motion and accompanying documents on August 2, 2021, and that the Government "willfully ignored the Court's order, thereby waiving any right to object." (Objection at 3, Jan. 10, 2022).

At the Motion Hearing, the Government acknowledged that Adriatico did complete service under federal guidelines by mailing a copy of the motion to the Office of the Attorney General of Guam, but indicated that he did not serve a filed copy, as practiced locally. The Government further noted that a search had to be conducted to track down the mailed package after it discovered the Court's September 8, 2021 Order because the initial motion never made its way to an attorney for review. The Court finds that the Government did not intentionally neglect to timely file a response and that consideration of the Government's opposition will also

give the Court a fuller picture of the two cases before it.[3]  Therefore, the Court grants the Government's Motion for Leave to File Untimely Opposition to Motion for Compassionate Release and will consider the arguments in opposition of the Motion for Compassionate Release set forth within.

Adriatico moves the Court to reduce his sentence and grant him compassionate release because (1) he is housed in a prison that is experiencing a COVID-19 outbreak and he has a high risk of suffering serious illness if he gets reinfected; and (2) subsequent case law and scientific evidence regarding youthfulness and the adolescent brain support lenient treatment of youthful offenders.  (Mot. Compassionate Release & Reduction in Sentence at 1, Aug. 4, 2021).

The reduction of a sentence after entry of judgment is governed by 8 G.C.A. § 120.46, which provides as follows:

> The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.  The court may reduce a sentence within one hundred twenty (120) days after the sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one hundred twenty (120) days after entry of any order or judgment of the Supreme Court of Guam, having the effect of upholding a judgment of conviction.

8 G.C.A. § 120.46.  Here, Adriatico was sentenced in 1984 for both CF0085-83 and CF0116-84. Adriatico's convictions in CF0085-83, with the exception of one count of Possession and Use of a Deadly Weapon in the Commission of a Felony, were affirmed by the District Court of Guam Appeals Division in 1986.  Adriatico does not set forth that his sentences in either CF0085-83 or CF0116-84 were illegal.  Therefore, a reduction of sentence is inappropriate under section 120.46.

Guam does not have its own compassionate release statute.  In federal courts, a defendant can directly petition a court for a sentence reduction pursuant to the First Step Act of

---

[3]  Even if the Court did not consider the Government's Opposition, this would not equate to an automatic granting of Adriatico's Motion.  The Court still has a duty to analyze the merits of the motion before rendering its decision. *See Quitugua v. Flores*, 2004 Guam 19.

2018. *See United States v. Lujan,* 2020 WL 7554133 at *1 (D. Guam Dec. 20, 2020) (citing First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018)). 18 U.S.C. § 3582(C)(1)(A) provides in relevant part that:

> The court may not modify a term of imprisonment once it has been imposed except that ... in any case ... the court, ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). Thus, for a motion to be granted under this section, a "defendant must satisfy three requirements: first, a defendant must exhaust administrative remedies; second, the court must find that extraordinary and compelling reasons warrant such a reduction; and third, the court must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. As the moving party, the defendant bears the burden." *Lujan,* 2020 WL 7554133 *1 (internal quotation marks and citations omitted). The factors in section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established...;
> (5) any pertinent policy statement...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553. It is not clear to the Court at this time whether Adriatico has exhausted any administrative remedies, i.e., that he has applied to the Guam Department of Corrections Warden for early release and was denied. Nonetheless, upon reviewing what Adriatico asserts are "extraordinary and compelling reasons" and the factors set forth in section 3553, the Court finds he has not made the necessary showing to warrant compassionate release.

## A. Extraordinary and Compelling Reasons

Adriatico moves for a reduction of his sentence on the grounds that his age and race places him at risk of severe illness from COVID-19. (Mot. at 6). Adriatico argues that he "is unable to protect himself by following CDC's strict recommendations, including the most important recommendation to practice social distancing" and that "[t]here are many opportunities for COVID-19 to enter and spread rapidly throughout the prison as has been demonstrated by the continuously escalating number of infections and deaths in BOP facilities." (Mot. at 3-4). Adriatico further argues that because the pandemic causes lockdowns and restrictions at the prison, his sentence "exceeds what the court anticipated at the time of sentencing." *Id.* at 4-5. The Government argues that Adriatico has not specified any medical conditions, other than his age, which is not advanced and is therefore not a factor under 18 U.S.C. § 3582(c)(1); that he has not alleged that "deaths have occurred in the prison where he is housed"; and that he has not provided the Court with any way to "assess the seriousness of the outbreak" at the prison. (Opp'n at 7). In response, Adriatico sets forth that "the delta and omicron variants has been spreading at USP Atwater from as early as December 2021 to present date"; that Unit 1A was on a full COVID-19 quarantine lockdown; and that the Associate Warden at USP Atwater died from COVID-19 complications in December 2021. (Correspondence at 1-2, Feb. 7, 2022).

Although Adriatico argues that the BOP has deficient COVID-19 safety protocols, he does not set forth any specific medical conditions that he faces that increase his risk of severe

illness from COVID-19.[4] At this time, the BOP's public webpage containing coronavirus-related data for BOP facilities does not list any active cases of COVID-19 at Atwater, only that 420 inmates and 120 staff have recovered and that the facility is currently operating under an operation level 2.[5] *See BOP: COVID-19 Update*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 29, 2022).[6] "General characteristics like race and age only constitute 'extraordinary and compelling' reason for a sentence reduction when they are coupled with health conditions that make a prisoner unusually vulnerable to the COVID-19 illness." *Lujan*, 2020 WL 7554133 at *2 (citations omitted). Further, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). At the Motion Hearing, Adriatico also informed the Court that he already had contracted COVID-19 and that he was vaccinated. Thus, there is nothing before the Court at this time to indicate that should Adriatico be reinfected with COVID-19, he is at high risk of severe illness and would not receive proper treatment at Atwater, *see, e.g., United States v. Rodrigues*, 2020 WL 5351029 at *6 ("conditions that can be managed in prison are not a basis for compassionate release."), or that Adriatico is more at risk for an adverse outcome in prison that he would be if released. Accordingly, the Court finds that Adriatico has not met his burden

---

[4] The CDC continously reviews and lists medical conditions that may place a person at higher risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Apr. 29, 2022). "Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021).

[5] USP Atwater has 1,062 total inmates (947 at USP and 115 at the Camp) according to the BOP website. *See USP Atwater*, BOP, https://www.bop.gov/locations/institutions/atw/ (last visited Apr. 29, 2022).

[6] The BOP notes that it "will update the open COVID-19 confirmed positive test numbers, recoveries, and the number of COVID-19 related deaths each weekday at 3:00 p.m. The positive test numbers are based on the most recently available confirmed lap results involving open cases from across the agency as reported by the BOP's Office of Occupational Safety and Health at 11:00 a.m. each day" and that "reported staff deaths have been determined to be work-related as defined by 29 CFR 1904 (OSHA Recordkeeping standard)." *BOP: COVID-19 Update*, BOP, https://www.bop.gov/coronavirus/ (last visited Apr. 29, 2022).

---

*People v. Adriatico*
CF0116-84 & CF0085-83
Decision and Order

of showing that there are "extraordinary and compelling reasons" to justify his immediate release.

**B. Section 3553(a) Factors**

Even if the Court found an "extraordinary and compelling reason" exists, it could still deem compassionate release not warranted based on a review of the factors set forth in section 3553(a), *See Lujan*, 2020 WL 7554133 at *3 (setting forth that section 3553(a) factors override.). Adriatico acknowledges the seriousness of the offenses in both his Motion and at the Motion Hearing, but argues that he "was a very troubled and immature adolescent who was prone to mental and emotional challenges." (Mot. at 13). Adriatico sets forth that despite his imprisonment, he "has completed numerous adult continuing educational programs and also self-improvement programs." *Id.* Attached to Adriatico's Motion is a copy of the educational courses that he has taken at Atwater. (Mot. Appendix B). The Court acknowledges the effort that Adriatico has put into his own rehabilitation. The Court also acknowledges that Adriatico has served a significant amount of time in prison. The Court does not find, however, that Adriatico has shown that this amount of time is sufficient given the seriousness of the offenses committed. Adriatico and his co-actor engaged in a crime spree that left seven people dead and ten seriously injured, and just months after having been convicted and sentenced, shot four inmates in prison resulting in two inmates dying from their injuries and two surviving but having been permanently disabled. Although Adriatico sets forth that the Court should consider more recent developments in scientific evidence and case law indicating leniency for young offenders under the age of twenty-five, the Court does not find that such developments are appropriate for consideration under compassionate release. Further, the sentencing of a defendant under Guam law is not subject to federal sentencing guidelines. Therefore, the Court DENIES Defendant's Motion for Compassionate Release and Reduction in Sentence.

//

//

//

//

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for Compassionate Release and Reduction in Sentence.

**IT IS SO ORDERED** this ⸻ MAY 0 5 2022 ⸻.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

_____AG Prosecution_____

Date: 5/5/22 Time: 11:31am

Antonio M. Cruz
Deputy Clerk, Superior Court of Guam

_People v. Adriatico_
CF0116-84 & CF0085-83
Decision and Order